IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:06-CV-240-FL

| | | |
|---|---|---|
| DAVITA J. HARRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Davita J. Harrell ("plaintiff") challenges the final decision of

defendant Commissioner of Social Security ("Commissioner") denying her application for a period

of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on

the grounds that plaintiff is not disabled.[1] The case is before the court on the respective parties'

motions for judgment on the pleadings (DE #13, 17). The motions were referred to the undersigned

Magistrate Judge for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For

the reasons set forth below, it is recommended that plaintiff's motion be allowed, the

Commissioner's motion be denied, and this case be remanded for further proceedings.

## I. BACKGROUND

### A.    Case History

Plaintiff filed applications for DIB and SSI on 5 November 2003, alleging a disability onset

date of 15 April 2000 due to irritable bowel syndrome, fistulas, hypertension, and obesity.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

(Transcript of Proceedings ("Tr.") 75-78, 82, 112, 262-64). The application was denied initially on 9 February 2004 and on reconsideration on 8 April 2004, and a request for hearing was timely filed on 3 May 2004. (*Id.* 65-69, 72-75). On 27 December 2005, a video hearing was held before an Administrative Law Judge ("ALJ"). (*Id.* 23-62). Plaintiff was not represented by counsel at the hearing before the ALJ. (*Id.* 29-30).

In a written decision dated 14 June 2006, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB or SSI. (*Id.* 11-18). Plaintiff's timely request for review by the Appeals Council was denied on 29 August 2006. (*Id.* 4-6). Plaintiff then commenced this proceeding for judicial review on 15 November 2006 pursuant to 42 U.S.C. § 405(g). (*See* Complaint (DE #3)).

## B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act goes on to describe disability more specifically in terms of impairments:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B).

The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

2

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The burden of proving disability falls upon the claimant. *English v. Shalala*, 10 F.3d 1080, 1082

(4th Cir. 1993).

The disability regulations under the Act ("Regulations") provide the following five-step

analysis that the ALJ must follow when determining whether a claimant is disabled:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the

analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that

alternative work is available for the claimant in the national economy. *Id.*

3

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

## C.    Findings of the ALJ

Plaintiff was forty years old on the alleged onset date of disability and was forty-five years old on the dates of the administrative hearing. (Tr. 75). She has a bachelor's of science degree in clothing and textiles which she earned in 1982. (*Id.* 32). Plaintiff's past work experience included work as a leasing agent, teacher's aide, disability insurance claims examiner, newspaper carrier, site manager at an apartment complex, companion and a supervisor of survey workers. (*Id.* 33-37).

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. (*Id.* 13, ¶ 2). At step two, the ALJ found that plaintiff had two medically determinable impairments which were severe withing the meaning of the Regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c): Crohn's disease and irritable bowel syndrome. (*Id.* 13 ¶ 3). At step three, the ALJ found that plaintiff did not have any impairments that met or medically equaled, singly or in combination, one of the impairments listed in Appendix 1 to 20 C.F.R. pt. 404, subpt. P. (*Id.* 14 ¶ 4).

4

At step four, the ALJ determined that plaintiff had the RFC to lift and carry up to 25 pounds frequently and 50 pounds occasionally,[2] and to stand and walk for up to six hours in an eight-hour work day while requiring a sit/stand option with no postural, manipulative, visual, communicative, or environmental limitations and consequently, also retained the RFC to perform the requirements of light and sedentary work activity. (*Id.* 16 ¶ 5). The ALJ also determined that plaintiff could perform her past relevant work as a supervisor of survey (*i.e.*, census) workers. In the alternative, disregarding for analytical purposes plaintiff's ability to do her past relevant work, the ALJ found at step five, based on the testimony of a vocational expert ("VE"), that plaintiff would be capable of making a vocational adjustment to other work, performing simple, routine, repetitive tasks, with the option to sit and stand at will and only occasional interaction with others in a non-production environment. (*Id.* 18 ¶ 7, 54).

## II. DISCUSSION

### A. Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ's decision should be reversed because the ALJ erred: (1) by not properly evaluating or developing the record regarding plaintiff's depression; (2) finding that plaintiff has two, inconsistent RFC's without providing an adequate rationale for either; (3) finding that plaintiff's prior employment as a census worker supervisor was past relevant work within the meaning of the Act and Regulations; (4) failing to identify and resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"); and (5) failing to make a proper

---

[2] This is the definition of medium work. 20 C.F.R. §§ 404.1567(c), 416.967(c). As the ALJ notes (Tr. 14 ¶ 5), the capacity to do medium work includes the capacity to do light and sedentary work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

credibility finding. Each of these contentions is examined below following a discussion of the applicable standard of review.

## B. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

6

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## C. Evaluation and Development of Record regarding Plaintiff's Depression

There is evidence in the record, including hearing testimony by plaintiff, that she has depression. Nevertheless, the ALJ did not make an express finding at step two as to whether or not plaintiff's depression was severe as defined in the Regulations.[3] In addition, the ALJ did not apply to plaintiff's depression the special technique under the Regulations for mental impairments. The ALJ also did not obtain records of all dealings plaintiff had with psychiatrists or psychologists. Plaintiff contends that in all these respects the ALJ committed reversible error. The court will examine each contention in turn.

**1. Severity Determination.** An impairment is considered severe within the meaning of the Regulations only if it "significantly limits . . . [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Conversely, an impairment is not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work

---

[3] Depression is a common consequence of Crohn's disease, as the subject of the Crohn's disease/depression study discussed below suggests. *See, e.g.,* http://www.mayoclinic.com/health/crohns-disease/AN01434. It is therefore conceivable that plaintiff's claimed depression is subsumed in the ALJ's evaluation of plaintiff's Crohn's disease, including her finding that plaintiff's Crohn's disease is a severe impairment, but the decision does not clearly indicate that is the case.

7

even if the individual's age, education, or work experience were specifically considered." Soc. Sec. Ruling 85-28.

It is true, as plaintiff contends, that the ALJ did not make an express finding that plaintiff's depression was not severe. However, the absence of an express finding on severity was not essential because other findings by the ALJ make it clear both that she did consider plaintiff's depression and that she determined it to be not severe.

Specifically, the ALJ first describes the findings in a treatment note for an August 2005 visit by plaintiff to Duke University Medical Center ("DUMC"). (Tr. 16, 207). Plaintiff complained of difficulties with concentration, sleeping, and memory; these complaints were determined to stem from plaintiff's untreated anxiety and depression; and plaintiff expressed interest in participating in a study on Chohn's disease and depression being conducted at DUMC by a Dr. Indu Varia. (*Id.*). The ALJ then discusses a November 2005 DUMC treatment note. The note states that plaintiff did enroll in the study, started on the anti-depression drug Lexapro, experienced significant improvement according to both plaintiff and Dr. Varia, and received Lexapro refills. (*Id.* 16, 256).

The ALJ subsequently found expressly that the objective evidence did not support the level of impairment plaintiff claimed from her depression:

> She has not been treated by a psychiatrist [4] and had only been involved with a depression study of medication for her depression, and as the objective findings are minimal, there is little in her medical records to objectively support the level of impairment she is claiming.

(*Id.* 17). At the hearing, plaintiff testified that she could not do any of her prior work "[b]ecause my concentration is not good, nor is my short-term memory." (*Id.* 37). The ALJ questioned plaintiff

---

[4] Plaintiff testified that she did receive treatment briefly at a psychology clinic, about which the ALJ questioned plaintiff at the hearing (Tr. 40, 46, 57) and which is discussed below.

8

regarding her depression, the care she received for it, and the related records. (*Id.* 37-40, 45-46, 57).

The ALJ also found that she "has taken into account the claimant's complaints of depression in determining her [RFC]." (*Id.* 17). The RFC as determined by the ALJ does not include any restrictions manifestly relating to depression. (*See id.* 14 ¶ 5).

From these findings, it is apparent that the ALJ concluded that plaintiff's depression did not significantly limit plaintiff's ability to do basic work activities, having no more than a minimal effect on her ability to work, and was therefore not a severe impairment. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); Soc. Sec. Ruling 85-28. Nevertheless, in light of the recommended remand, the ALJ will need to revisit her severity determination. To avoid disputes over what the ALJ's determination is, the decision on remand shall expressly state the severity determination made regarding plaintiff's depression. There shall also be an express finding regarding whether the depression meets or equals any listing alone or in combination with any other impairments.

**2. Application of Special Technique.** When a claimant presents a colorable claim of mental impairment, an ALJ must ordinarily rate the claimant's functional limitations, and make specific findings and conclusions regarding them in accordance with a special technique prescribed the Regulations. *See Moore v. Barnhart,* 405 F.3d 1208, 1214 (11th Cir. 2005); 20 C.F.R. §§

404.1520a, 416.920a.[5] The decision is devoid of any indication that the ALJ followed the special technique, and the court concludes that she did not.

It can plausibly be argued under the present record that the ALJ was not required to apply the special technique. The record lacks any objective medical evidence that plaintiff's depression had any effect on her ability to perform work-related activities. None of the medical records referencing depression states that her depression had this effect. (Tr. 207, 226, 228, 248, 256, 257).

Moreover, plaintiff testified that she saw Dr. Varia for only about four months, from August to November 2005, although she continued taking Lexapro thereafter, receiving a further prescription for it from the adult nurse practitioner at DUMC treating her for Crohn's disease at her visit in February 2006. (*Id.* 45-46, 207, 248, 256). Prior to participating in the DUMC study, plaintiff testified that she had seen a psychologist for three months, from June to August 2005 at Tar River Psychological Associates. (*Id.* 40). Plaintiff therefore saw a psychologist or psychiatrist for about only half a year, which is far short of the durational requirement of twelve months to qualify as a disabling impairment. *See* 20 C.F.R. §§ 404.1509, 416.909; *Albright v. Cmm'r of Soc. Sec. Admin.*, 174 F.3d 473, 474 (4th Cir. 1999) ("Because the duration of his qualifying impairment was, at most, approximately nine months, [plaintiff] was ineligible for a disability award."). Moreover, this half-year period, which did not begin until mid-2005, contrasts with the over five-year period as of the

---

[5] Under the special technique, the ALJ is to rate the degree of a claimant's functional limitation in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The first three functional areas are rated on a five-point scale: none, mild, moderate, marked, and extreme. A four-point scale is used to rate the fourth functional area: none, one or two, three, and four or more. *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4). The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *Id.* The ALJ's written decision "must incorporate the pertinent findings and conclusions based on the technique, and must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." *Id.* §§ 404.1520a(e)(2), 416.920a(e)(2). The decision must also include a specific finding as to the degree of limitation in each of the four functional areas. *Id.*

10

decision date during which plaintiff claimed that she had been disabled, which began in early 2000. Notably, she did not claim depression as an impairment in her application for either DIB or SSI benefits. (Tr. 82).

Furthermore, the medical records indicate that plaintiff responded well to Lexapro. (*Id.* 256; *see also id.* 228 (depression found to be "stable" at 22 August 2005 DUMC visit)). An impairment that is controlled by medication is not disabling. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it not disabling.").

Notwithstanding these considerations, there is no binding authority clearly holding that the special technique need not be applied on the basis of a record such as that here. Indeed, the weight of authority is probably to the contrary. *See Morris v. Barnhart*, No. SA-05-CA-1019-XR/NN, 2007 WL 496851, at *3-4 (W.D. Tex. 7 Feb. 2007); *Keys v. Barnhart*, 430 F. Supp. 2d 759, 772 (N.D. Ill. 2006); *McCarty v. Barnhart*, No. C 04-05060MHP, 2005 WL 5108536, at *9-10 (N.D. Cal. 14 Oct. 2005). Moreover, as discussed below, the present record is not fully developed on the issue of plaintiff's depression. Even if non-application of the special technique could be justified, it is preferable that it be applied under the circumstances presented to ensure that the ALJ has adequately considered a claimant's mental impairments. For these reasons, the decision on remand shall include application of the special technique for mental impairments and the requisite documentation of it.

**3. Development of the Record.** Plaintiff contends that the ALJ failed to fully develop the record by not obtaining plaintiff's medical records from Tar River Psychological Associates despite her acquisition of releases from plaintiff at the hearing and statements that she would attempt to obtain the records (Tr. 38, 47, 57). Plaintiff further contends that although the ALJ

11

did obtain other records for plaintiff subsequent to the hearing (*see id.* 3, 30, 225-61), some of which addressed plaintiff's depression and some of which did not,[6] she never provided a copy of those records to plaintiff or afforded her an opportunity to comment or provide additional information in response to them. The plaintiff's objections are meritorious in part.

An ALJ has the duty to fully and fairly develop the administrative record. *Knuckles v. Astrue*, 2:06cv00069, 2008 WL 238574, at *2 (W.D. Va. 28 Jan. 2008) (*citing Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir.1986)). This duty is heightened when a claimant is unrepresented. *Cook*, 783 F.2d at 1173 (ALJ "cannot rely only on the evidence submitted by the claimant when that evidence is inadequate."). In the case of medical records specifically, the Act requires that the ALJ "make every reasonable effort to obtain from the individual's treating physician . . . all medical evidence, including diagnostic tests, necessary in order to properly make [a disability] determination, prior to evaluating medical evidence obtained from any other source on a consultative basis." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G); *see also* 20 C.F.R. §§ 404.1512(f), 416.912(f) (Social Security Administration will make "every reasonable effort to obtain evidence from . . . [claimant's] own medical sources"). "While the ALJ must make a reasonable inquiry into a claim of disability, he has no duty to 'go to inordinate lengths to develop a claimant's case.'" *Craft v. Apfel*, 164 F.3d 624 (Table), 1998 WL 702296, at *3 (4th Cir. 6 Oct. 1998) (*quoting Thomas v. Califano*, 556 F.2d 616, 618 (1st Cir. 1977)).

---

[6] The additional records from Tarboro Clinic (Tr. 225-44, Ex. 9F), a local provider plaintiff visited, and DUMC (*id.* 248-61, Ex. 11F) deal primarily with plaintiff's Crohn's disease but do mention her depression on occasion (*id.* 226, 228, 248, 256, 257). The other additional records obtained were from a cardiology group and do not discuss depression. (*Id.* 245-47, Ex. 10F).

12

With respect to the Tar River Psychological Associates records, there is no clear indication of their status in the ALJ's decision, even though there was ample time between the date of the hearing and the date of the decision (about six months) to obtain them. The record does not show whether one of the releases obtained by the ALJ was ever sent to Tar River Psychological Associates; if so, whether any response was received; or even if there are any records relating to plaintiff at Tar River Psychological Associates. If they do exist, the records would be important because they are potentially only one of two sets of records dedicated to plaintiff's depression. The other set is the records of Dr. Varia, which are also not in the record and whose status is also not shown in the record. In short, the present record in this case is now devoid of the medical records from the two providers who purportedly treated plaintiff specifically for her mental impairment and there is no indication what efforts have been made by the ALJ to obtain them. On remand, the ALJ shall attempt to obtain these records and, if they are not acquired, set out the reasonable efforts made to obtain them. The ALJ shall also consider acquisition of a consultative examination to the extent required by the Regulations. *See* 20 C.F.R. §§ 404.1512(f), 416.912(f).

In making this determination, the court is aware that, while plaintiff was unrepresented by counsel at the hearing, she is no longer. Plaintiff's counsel has not submitted the Tar River Psychological Associates records or any other additional records through a motion to remand or otherwise. *Wilkins v. Sec'y of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (party may move to remand on the basis of new evidence where the evidence is new and material and the party can establish good cause for failing to present the evidence earlier). The failure of plaintiff to obtain and present the records does not exonerate the ALJ from carrying out her duty to adequately develop the record.

13

The court is also aware that the period of treatment at Tar River Psychological Associates was only a few months and was followed by participation for several months in the DUMC study and subsequent continued successful use of Lexapro to control her symptoms of depression. The court is unwilling to assume that unseen records would necessarily show that plaintiff's depression is no more serious than the ALJ found it to be based on the present record.

As to the records the ALJ did obtain after the hearing, plaintiff has had the opportunity before this court to comment on them and, if she deemed it appropriate, attempt to present new evidence responsive to it. As indicated, plaintiff has offered no additional evidence. For her part, the ALJ did consider and discuss in her decision each set of records obtained after the hearing. (Tr. 15-16). Plaintiff points to no portion of these records that compels any findings contrary to those made by the ALJ on the issue of depression or any other issue. The court therefore does not find valid plaintiff's contention that she has been deprived of the opportunity to comment on records obtained after the hearing. Needless to say, on the recommended remand, plaintiff would have yet another opportunity to comment.

## D. Determination of Plaintiff's RFC

**1. Alleged Existence and Inconsistency of Two RFC Determinations.** Plaintiff's contention that the ALJ made two inconsistent RFC determinations is baseless. The argument fails most basically because the ALJ made only one RFC determination, not two. As indicated, the ALJ determined at step four that plaintiff had the RFC to perform medium work and to stand and walk for up to six hours in an eight-hour work day while requiring a sit/stand option with no postural, manipulative, visual, communicative, or environmental limitations (*Id.* 14 ¶ 5). This is the only RFC determination the ALJ made.

14

Based on this RFC, the ALJ determined, also at step four, that plaintiff could perform her prior job as a supervisor of survey workers. (*Id.* 17 ¶ 6). More specifically, plaintiff had served intermittently as a crew leader for the United States Census Bureau between 1998 and 2000, supervising Census Bureau enumerators who went out and took surveys. (*Id.* 36, 52). The ALJ determined that this work qualified as past relevant work within the meaning of the Regulations. *See* 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). Having found plaintiff able to perform this work, the ALJ concluded that she was not required to proceed to step five of the sequential analysis, but elected to do so on an alternative basis, in effect disregarding for analytical purposes her finding regarding plaintiff's ability to perform past relevant work.

At step five, the ALJ assumed that plaintiff could perform unskilled work involving only simple, routine, and repetitive tasks with the option to sit and stand at will and only occasional interaction with others in a non-production environment. (Tr. 18, 54). Plaintiff contends that this assumed set of capabilities constitutes a second RFC. The contention ignores the basic nature of the RFC; it "is the most . . . [a claimant] can still do despite . . . [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); Soc. Sec. Ruling 96-8p ("RFC is not the least an individual can do despite his or her limitations or restrictions, but the most."). The capabilities assumed by the ALJ at step five are therefore simply a subset of the capabilities included in the RFC the ALJ found plaintiff to have at step four.

Stated differently, a person who has the capabilities included in the RFC necessarily also has the capabilities posited by the ALJ at step five. These posited capabilities are accordingly by definition not inconsistent with the RFC, as plaintiff argues.

15

It was understandable for the ALJ to make an alternative finding at step five, regarding other jobs that would be available to plaintiff, given the possibility that plaintiff's prior census-related work might not be available to her given special attributes of that work. Specifically, employment by the United States Census Bureau as a supervisor of census takers could reasonably be expected to be episodic and intermittent, as it had already been for plaintiff. Moreover, as the ALJ noted, the position allowed plaintiff the opportunity to work at home, where she could enjoy the sit/stand option at will and use of the bathroom when needed. (Tr. 17). Other courts have upheld alternative findings regarding ability to adjust to other work similar to that in this case. *See Rucker v. Shalala*, 894 F. Supp. 1209, 1221 (S.D. Ind. 1995) (court held that even though it was unnecessary for ALJ to go to step five after concluding that plaintiff could perform past relevant work, ALJ's decision at step five was correct as well); *see also Cainglit v. Barnhart*, 85 Fed. Appx. 71, 2003 WL 22963117, at *1 (10th Cir. 17 Dec. 2003) (court affirmed on other grounds ALJ decision that determined that plaintiff could return to past relevant work or in the alternative at step five, had the RFC to perform other work of a sedentary nature); *Oakes v. Barnhart*, 400 F. Supp.2d 766, 774 (E.D. Pa. 2005) (same).

The ALJ's use of an alternative finding could therefore arguably be justified. The court declines, however, to make a definitive ruling on its propriety in light of the recommended remand. In the remand, the ALJ will need to re-visit her step four analysis and, if appropriate, her step five analysis as well. Use of an alternative finding like that in the present decision may or may not be appropriate or proper.

16

**2. Alleged Lack of Rationale for RFC Determination.** Plaintiff argues that the ALJ did not provide any rationale for her RFC determination and that the failure to do so frustrates court review of the decision. The court disagrees.

The ALJ's rationale is clear. She states expressly that she adopted in full a state agency physical RFC assessment done in February 2004 that found plaintiff to have an RFC the same as that the ALJ determined plaintiff to have. (Tr. 16, 198-205). The ALJ explained that she adopted the assessment because "it gives sufficient consideration to the claimant's impairments and limitations arising therefrom." (*Id.* 16). The ALJ further explained that plaintiff's physicians never indicated that her impairments could reasonably be expected to result in work-related limitations. (*Id.* 17). She also cited to testimony by plaintiff showing that she had the ability to do lifting and carrying, go grocery shopping, and attend church. (*Id.* 17, 43-44).

These findings by the ALJ were based, in part, on her lengthy review of the medical evidence of record. (*Id.* 15-16). Specifically, the ALJ recounted in detail the history of plaintiff's recurrent perianal abscesses and fistula disease from February 2000 through February 2006. (*Id.*). Prior to 2004, the treatment consisted primarily of surgical procedures and the administration of antibiotics and steroids, which resulted in significant improvement. (*Id., e.g.,* 15, 151). In 2004, plaintiff was diagnosed with Crohn's disease and given Remicade, resulting in further improvement. (*Id., e.g.,* 15-16, 215). In August 2005, plaintiff's Crohn's disease was found to be in remission (*id.* 16, 206) and a report in February 2006 states that her condition is improved and her Crohn's disease is stable (*id.* 16, 248). The ALJ also reviewed the medical evidence regarding plaintiff's heart, which indicated seemingly stable valvular disease. (*Id.* 15, 245-47).

17

As discussed previously, the ALJ's RFC determination also took into account the evidence relating to plaintiff's depression. (*Id.* 16, 17). In addition, she considered plaintiff's testimony regarding the severity of her impairments and the resulting limitations, which the ALJ did not find fully credible, as discussed further below. (*Id.* 14, 17).

On the recommended remand, the ALJ will, of course, need to determine anew plaintiff's RFC. The court therefore declines to express an opinion whether or not the RFC determination is supported by substantial evidence. The comments the court has provided are intended to provide the parties guidance on the recommended remand.

### E.    Past Relevant Work

Plaintiff maintains that the ALJ lacked sufficient earnings information to determine that plaintiff's census-related work paid a sufficient amount to qualify as past relevant work. The court agrees that the ALJ erred with respect to her finding regarding past relevant work, but on grounds different than those stated by plaintiff.

"Past relevant work" is defined as "work that [the claimant] has done within the last 15 years, that was *substantial gainful activity*, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1) (emphasis added). "Substantial gainful activity" is work that is both substantial, in that it involves doing significant mental or physical activities, and gainful, in that it is the kind of work usually done for pay or profit. *Id.* §§ 404.1572(a), (b), 416.972(a), (b). Generally, in evaluating whether work activity qualifies as substantial gainful activity, the primary consideration is the amount of earnings from the work activity. *Id.* §§ 404.1574(a)(1), 416.974(a)(1).

Although plaintiff contends that there is no earnings information for plaintiff for the years when she was working as a supervisor of census takers, there is. A certified earnings record for

18

plaintiff shows that she earned $5,520.01 in 1998, $4,949.79 in 1999, and $8,638.88 in 2000. (Tr. 80). The ALJ found that this latter sum of $8,638.88 was the amount plaintiff earned in 2000 after the date of the alleged onset of disability, apparently relying on the same earning record. (*Id.*).

The ALJ made this finding as part of her step one analysis as to whether plaintiff had engaged in substantial gainful activity during the alleged period of disability. The ALJ also set out the earnings for plaintiff for the additional years 2001 through 2004, all of which were less than $4,000.00 and apparently taken from the same earnings record referenced. (*See id.* 13, 80). The ALJ concluded that plaintiff had not engaged in substantial gainful activity not only during the alleged period of disability, but not "at any time relevant to this decision." (*Id.* 13 ¶ 2 (*citing, e.g.*, 20 C.F.R. §§ 404.1571, *et seq.*, 416.971, *et seq.*)). The ALJ found expressly that "[f]or purposes of this decision, the undersigned finds that these earnings [from 2000 to 2004] do not represent substantial gainful activity." (*Id.*).

These findings conflict with the ALJ's finding at step four that plaintiff's prior work as a census taker supervisor from 1998 to 2000 qualified as past relevant work and therefore paid enough to be substantial gainful activity. Specifically, at step one the ALJ found plaintiff's earnings of $8,638.88 in 2000 to be inadequate, but at step four found, by implication, that they were adequate to render the work activity substantial gainful activity. Since over $8,000.00 was found to be inadequate, it follows that the earnings of $5,520.01 in 1998 and $4,949.79 in 1999 would also be inadequate, particularly in light of the finding that plaintiff had not engaged in any substantial gainful activity at any time relevant to the decision, which would seem to include the period during which plaintiff worked as a census taker supervisor. Nevertheless, at step four, the ALJ found, by

19

implication, that the earnings in 1998 and 1999 were adequate to qualify the supervisor work as substantial gainful activity.[7]

Where an ALJ's findings are inconsistent or contain irreconcilable contradictions, remand is warranted. *See, e.g., Leech v. Barnhart*, 111 Fed. Appx. 652, 658, 2004 WL 2203966, at *7 (3d Cir. 27 Sept. 2004); *Cox v. Apfel*, 166 F.3d 346 (Table), 1998 WL 864118, at *3 (10th Cir.14 Dec. 1998) (case remanded where ALJ's decision was internally inconsistent); *Dehate v. Secretary of Health and Human Services*, 791 F.2d 932 (Table), 1986 WL 16845, at *1 (6th Cir. 2 April 1986) (case remanded where ALJ's findings were internally inconsistent). If the court were to uphold the findings at step one, then the findings regarding past relevant work at step four would arguably have to be found erroneous. One could argue that such error would be harmless if the alternative step five analysis the ALJ performed were proper. On the other hand, if the court were to uphold the past relevant work findings at step four, and specifically the implicit finding that plaintiff's work as a census supervisor in 2000 was substantial gainful activity, the finding at step one, at least for 2000, would arguably be erroneous. The effect of that determination would be to eliminate 2000 as a year for which plaintiff could be found disabled. The court cannot discern a principled basis upon which it may select which two of the inconsistent determinations by the ALJ should prevail. The court accordingly concludes that this case should be remanded to the ALJ for reconciliation of the conflict in her findings at steps one and four of the sequential analysis.

---

[7] Plaintiff's earnings for 1998 and 1999 were below the presumptive earnings threshold for substantial gainful activity established in the Regulations, and the earnings for 2000 were sightly above it. *See* 20 C.F.R. §§ 404.1574(b)(2)(i), 416.974(b)(2)(i), Table 1. The threshold figure for 1998 was $500.00 per month or $6,000.00 annually; for 1999 $500 per month for January through June and $700.00 per month for the remainder of the year or $7,200.00 annually; and for 2000 $700.00 per month or $8,400.00 annually.

Case 4:06-cv-00240-FL Document 19 Filed 02/05/08 Page 20 of 24

## F. Conflicts Between VE's Testimony and the DOT

Plaintiff argues that the ALJ erred by failing to ask the VE if the VE's testimony conflicted with the DOT and then to resolve the various conflicts that plaintiff alleges. Plaintiff relies on Social Security Ruling 00-4p, which requires the ALJ to elicit a reasonable explanation from the VE for any "apparent unresolved conflict between [the] VE . . . evidence and the DOT." 65 Fed Reg. 75759 (4 Dec. 2000). The court disagrees with plaintiff's contention that there are apparent unresolved conflicts that triggered a duty to inquire.

Specifically, plaintiff contends that the VE's testimony that plaintiff's prior work as a census supervisor was light and semi-skilled with an SVP[8] of 6 and found at DOT 205.1370014 conflicts with the DOT because a position with an SVP of 6 is actually a skilled position. (Tr. 53). This testimony, however, related to plaintiff's purported past relevant work, an issue at step four of the sequential analysis. The appropriate skill level of a position is an issue at step five when determining the existence of alternatives to past relevant work. Therefore, any potential discrepancy between the VE's testimony and the DOT was not material and was harmless error.

In addition, plaintiff contends that the VE testified about jobs with a sit/stand option (*see* tr. 54) and there is no allowance in the DOT for sit/stand options. While such classifications are not specifically identified in the DOT, a VE can provide more detailed information about jobs or occupations than the DOT without presenting a conflict. The Fourth Circuit in *Walls v. Barnhart*, 296 F.3d 287, 292 (4th Cir. 2002) held specifically that a VE can allow for a sit or stand option

---

[8] SVP is an acronym for specific vocational preparation and is a measure of the intellectual capacity required for a position. *See* DOT, App. C, http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

without creating an inconsistency. The contention by plaintiff regarding the sit/stand option therefore also lacks merit.

Finally, in conjunction with her arguments regarding the DOT, plaintiff contends that the three positions identified by the VE as available to plaintiff in lieu of past relevant work--a photocopy operator, mail clerk, and a shipping and receiving weigher (*see* tr. 54-55)--all conflict with the RFC posed by the ALJ. Plaintiff, of course, made a similar argument in contending that the ALJ made more than one RFC determination. Consistent with the discussion of that issue, the court finds that these three positions all involve light work that does not conflict and would be permissible within the confines of the RFC for medium work that the ALJ found for plaintiff. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (RFC is the most a claimant can do, not the least); Soc. Sec. Ruling 96-8p (same).

## G. Assessment of Plaintiff's Credibility

As noted above, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Id.* at 594-95. Plaintiff does not dispute that the ALJ made such a finding here. (Tr. 14, 17, ¶ 5). Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Craig*, 76 F.3d at 595. If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "grounded in the evidence." *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. R. 96-7p).

22

Here, the ALJ determined that plaintiff's statements about her impairments and their impact on her ability to work were not entirely credible in light of the objective medical evidence. Tr. 14, 17, ¶ 5. The ALJ discussed at length and in detail the evidence upon which her determination was based. *Id.* This includes much of the same evidence supporting the determination that plaintiff can perform medium work.

In light of the recommended remand, the court declines to make a ruling regarding ALJ's credibility determination. Nevertheless, for guidance, the court notes that, as the foregoing discussion illustrates, the general framework followed by the ALJ appears to have been proper.

## III. CONCLUSION

For the foregoing reasons, it is RECOMMENDED that plaintiff's motion for judgment on the pleadings be ALLOWED, the Commissioners's motion for judgment on the pleadings be DENIED, and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten business days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

23

This, the 5th day of February, 2008.

James E. Gates
United States Magistrate Judge

24